**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ADRIANNE L. BIELLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-512** |
| **ATLANTIC SPECIALTY INSURANCE COMPANY** | **SECTION "B"(4)** |

**AMENDED ORDER AND REASONS**

Before the Court is Defendant Atlantic Specialty Insurance Company's motion for summary judgment, seeking dismissal of all claims against it on the grounds that there are no genuine issues of material fact concerning Plaintiff Adrianne L. Bieller's ability to rebut the presumed validity of the uninsured motorist waiver executed by Defendant's insured, St. Tammany Parish Sheriff's Office. Rec. Doc. 22. Plaintiff timely filed an opposition memorandum. Rec. Doc. 26. Defendant then requested (*see* Rec. Doc. 29), and this Court granted (*see* Rec. Doc. 30), leave to file a reply memorandum (Rec. Doc. 31). For the reasons enumerated below,

**IT IS ORDERED** that the motion is **DENIED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a September 15, 2014 motor vehicle accident. Rec. Doc. 14-3 at 1. On that date, Adrianne L. Bieller ("Plaintiff") was traveling south on U.S. Highway 21 in St. Tammany Parish and, while stopped in traffic, was rear-ended by a vehicle driven by Ashley E. Miller. *Id.* At the time of the accident,

1

Plaintiff was on duty and in a marked patrol car for the St. Tammany Parish Sheriff's Office ("STPSO"). *Id.* Plaintiff alleges that Ms. Miller was an uninsured or underinsured motorist ("UM"), but that Atlantic Specialty Insurance Company ("Defendant") had previously issued automobile insurance to the STPSO that covered Plaintiff's vehicle for the negligence of an owner and/or operator of an uninsured or underinsured vehicle. *Id.* at 1-2. Consequently, on December 7, 2015 Plaintiff filed suit against Defendant in the 22nd Judicial District Court for the Parish of St. Tammany. *Id.* at 1-2.

On January 21, 2016, Defendant filed a notice of removal pursuant to 28 U.S.C. § 1332. Rec. Doc. 1 at 1. Thereafter, on January 28, 2016, Defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted, alleging that the STPSO waived UM coverage. Rec. Doc. 5. Plaintiff argued that the waiver was invalid, because it was not signed by the named insured or anyone with authorization to act as the insured's legal representative. Rec. Doc. 9.[1] Defendant replied that the documents attached to its motion to dismiss supported the claim of a valid UM waiver. Rec. Doc. 12. On March 9, 2016, this Court found that only the insurance policy, not the UM waiver, was mentioned in the

---

[1] The argument made in opposition to the instant motion for summary judgment is largely similar.

original petition. Rec. Doc. 16 at 3-4.[2] Plus, the UM waiver was central to Atlantic's defense, not to Plaintiff's claims, so it was not appropriate to consider in the context of a motion to dismiss. *Id.* at 4. Accordingly, we denied the motion to dismiss, but explicitly informed the parties that they could revisit the issue on a motion for summary judgment once further discovery was conducted. *Id.* at 5.

## II. THE PARTIES' CONTENTIONS

In the memorandum in support of its motion for summary judgment, Defendant explains that Plaintiff deposed Debbie Jo Taylor, a former employee of the STPSO who completed and signed the UM waiver, on August 4, 2016. Rec. Doc. 22-1 at 3 (citing Rec. Doc. 22-2 at 12-13).[3] During the deposition, Ms. Taylor testified that she signed the UM waiver form. Rec. Doc. 22-2 at 3. "Following the deposition, Ms. Taylor reviewed the [STPSO] file for the Atlantic policy at issue, and executed an affidavit affirmatively stating 'that the policy number and the name of the insurance company were included on the form . . . when she filled out and signed the form on June 30, 2014.'" Rec. Doc. 22-1 at 3 (quoting

---

[2] The policy even noted that certain "non-policy" forms were sent with the policy, including the "UM/UIM BODILY INJURY COVERAGE SELECTION FORM." Rec. Doc. 5-5 at 3. Even though Louisiana Revised Statute § 22:1295(1)(a)(ii) provided that the form "shall be conclusively presumed to become a part of the policy or contract when issued and delivered," there was no evidence at that time that the form was issued and delivered. Rec. Doc. 16 at 4.

[3] References to the excerpted deposition testimony of Ms. Taylor contained in Rec. Doc. 22-2 will be cited by referring to the record document page number, rather than the page number of the deposition transcript.

Rec. Doc. 22-3). Further, Defendant argues that former Sheriff Jack Strain authorized Ms. Taylor to execute the waiver on behalf of the STPSO. *Id.* at 4 (citing Rec. Docs. 5-7 at ¶ 7, affidavit of R. Jack Strain, Jr.; 22-2 at 7-12). Thus, Defendant concludes that "Plaintiff has conducted discovery involving Atlantic regarding the rebuttable presumption of validity for the UM waiver and is unable to present any facts or evidence that would rebut said presumption of validity." *Id.*

In response, Plaintiff argues that there exists a genuine issue of material fact as to whether Ms. Taylor had the legal authority to execute the UM waiver on behalf of former Sheriff Jack Strain. Rec. Doc. 26 at 2.

In its reply, Defendant asserts that Plaintiff did not dispute that the UM waiver complied in form and substance with the requirements of Louisiana law. Rec. Doc. 31 at 1. Defendant then argues that *Terrell v. Fontenot*, 11-1472 (La. App. 4 Cir. 6/27/12); 96 So. 3d 658 is controlling authority. *Id.* at 2.

### III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

4

(1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Furthermore, at the summary judgment stage, this Court is prohibited from weighing the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (noting that district courts must

"refrain from making credibility determinations or weighing the evidence" when deciding a motion for summary judgment) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

In our earlier Order denying Defendant's motion to dismiss, we stated that the UM waiver created a "rebuttable" presumption that the insured knowingly rejected coverage. Rec. Doc. 16 at 4 (citing La. Rev. Stat. Ann. § 22:1295(1)(a)(ii)). At the time, Plaintiff had not presented evidence to rebut that presumption, but we felt constrained out of fairness to offer her the opportunity to develop and subsequently present such evidence. *Id.* at 5. Nonetheless, we found that the majority opinion in *Terrell v. Fontenot*, 11-1472 (La. App. 4 Cir. 6/27/12); 96 So. 3d 658 was controlling authority. *Id.*

In *Terrell*, the Louisiana Fourth Circuit explained that "Louisiana has a strong public policy favoring UM coverage." 11-1472, p. 4; 96 So. 3d at 661 (citing *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 4 (La. 11/29/06); 950 So. 2d 544, 547). Consequently, "UM coverage is an implied amendment to an automobile liability policy, even when not specifically addressed therein, and it will be read into a policy unless validly rejected." *Id.* (citing *Kurz v. Milano*, 08-1090, p. 4 (La. App. 4 Cir. 2/18/09); 6 So. 3d 916, 919 (quoting *Duncan*, 06-363, p. 4; 950 So. 2d at 548)). In a similar vein, the rejection of such coverage must be "clear and

6

unambiguous," the insurer bears the burden of proving that the insured rejected such coverage in writing, and the rejection must be made upon a form prescribed by the Louisiana commissioner of insurance. *Id.* (citing *Daigle v. Authement*, 96-1662, p. 2 (La. 4/8/97); 691 So. 2d 1213, 1214; *Kurz*, p. 5; 6 So. 3d at 919; *Duncan*, 06-363, p. 5; 950 So. 2d at 547; LA. REV. STAT. Ann. § 22:1295(1)(a)(ii)). A properly completed form creates a rebuttable presumption that the insured knowingly rejected such coverage. *Id.* (citing § 22:1295(1)(a)(ii)). In *Duncan*, the Louisiana Supreme Court outlined what is required to properly complete a form rejecting UM coverage:

> Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen . . . then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan*, 06-363, pp. 11-12; 950 So. 2d at 551; *see also* § 22:1295(1)(a)(ii).

Here, the "UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY COVERAGE FORM" contains the initials "DJT" next to a statement that "I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist." Rec. Doc. 5-6 at 1. Further, the name "Debbie Jo Taylor" is clearly printed

7

below the signature of Debbie Taylor; the policy number is pre-printed as 791000777; and the date is handwritten as "6-30-14." *Id.* Ms. Taylor's deposition testimony and subsequent affidavit also establish that all of these form requirements were satisfied. Rec. Docs. 22-2 at 2-4; 22-3 at ¶ 6. Thus, it appears that the form was properly and completely filled out.[4] The only issue before us today is whether or not Ms. Taylor had the authority to sign the waiver as a "legal representative."

The court in *Terrell* explained that it understood the words "legal representative" in Revised Statute § 22:1295(1)(a)(ii), and presumably as used by the Louisiana Supreme Court in *Duncan*, "to mean an *individual* authorized on behalf of an entity." 11-1472, p. 6; 96 So. 3d at 662. Further, the court found that "[n]o Louisiana law exists requiring the governing body of an entity or a president or chief executive officer of an entity to formally and in writing specify who has authority to decline UM coverage." *Id.* at p. 7; 663. *See also Bergeron v. Liberty Mut. Ins. Co.*, 12-86, pp. 4-5 (La. App. 3 Cir. 6/6/12); 92 So. 3d 645, 648-49.

Nonetheless, Plaintiff argues that *Terrell* is not controlling in this case, because the STPSO is not a legal entity that necessarily requires representation by an individual. Rec. Doc. 26 at 8. Plaintiff relies on the fact that Louisiana law provides

---

[4] To that end, Defendant is technically correct when it states that "Plaintiff does not dispute that the form and substance of the UM waiver complies with Louisiana law . . . ." Rec. Doc. 31 at 1.

that the sheriff, not the sheriff's office, is the appropriate party to a suit. Rec. Doc. 26 at 8 (citing *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) ("although a sheriff's office is not a legal entity capable of being sued, Louisiana sheriffs are amenable to suit") (citing *Porch v. St. Tammany Par. Sheriff's Office*, 67 F. Supp. 2d 631, 635 (E.D. La. 1999)); *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 904 (E.D. La. 2001) ("Indeed, 'the law of Louisiana affords no legal status to the 'Parish Sheriff's Department' so that the department can sue or be sued, such status being reserved for the Sheriff.'") (quoting *Valentine v. Bonneville Ins. Co.*, 96-1382, pp. 4-5 (La. 3/17/97); 691 So. 2d 665, 668)). So, Plaintiffs reason that it was an individual (former Sheriff Jack Strain), not an entity (the STPSO), that had to give Ms. Taylor the authority to sign the UM waiver. Rec. Doc. 26 at 5.

Under Louisiana law, when an individual wishes to confer authority on another to sign a UM waiver on his or her behalf, such authority must be conferred in writing. LA. CIV. CODE arts. 2986, 2993; *Terrell*, 11-1472, p. 3; 96 So. 3d at 665 (dissent); *Holloway v. Shelter Mut. Ins. Co.*, 03-896 (La. App. 3 Cir. 12/10/03); 861 So. 2d 763, 768-69 ("As no writing exists that permits a finding of an act of procuration or mandate, and finding no representation arising through law, we conclude that, in this case, Ms. Holloway could not, without authorization, confect a UM

9

waiver on behalf of her son.")).[5] Thus, Plaintiff argues that if former Sheriff Jack Strain wished to confer authority upon Ms. Taylor to sign the UM waiver on his behalf, such authority had to be given in writing. Rec. Doc. 26 at 5-7, 9-10. Plaintiff concludes that, because there is no such writing, Ms. Taylor did not have the authority to sign the UM waiver and the waiver relied upon by Defendant is therefore invalid. *Id.*

To summarize, even though there is existing Louisiana case law that provides that a person signing a UM waiver on behalf of a legal entity does not have to have written authority to do so (*see Terrell*), there is also Louisiana case law that provides that a person signing a UM waiver on behalf of an individual does have to have written authority to do so (*see Holloway*).

Here, Ms. Taylor testified that she was told to sign all insurance forms on behalf of the department and that she received instructions from either a chief or the sheriff to execute the UM waiver on behalf of the STPSO. Rec. Doc. 22-2 at 7, 13. Plus, former Sheriff Jack Strain testified that Ms. Taylor was authorized, as a legal representative, to reject UM coverage on this particular policy. Rec. Doc. 5-7 at ¶ 7. Nevertheless, there

---

[5] The Louisiana Civil Code provides that a mandatary contract (a contract by which an individual confers authority upon another to act on his or her behalf) generally does not have to be in any particular form; however, "when the law prescribes a certain form for [the act to be done by the representative/mandatary], a mandate authorizing the act must be in that form." LA. CIV. CODE art. 2993 (this is commonly referred to as the "equal dignities rule"). Here, the UM waiver must be in writing, so the mandate must also be in writing. *See Holloway*, 2003-896, p.; 861 So. 2d at 768-69.

10

apparently is no writing designating Ms. Taylor as the legal representative with authority to sign the UM waiver.[6]

Consequently, this Court must determine if, when she signed the UM waiver, Ms. Taylor was acting on behalf of a legal entity (the STPSO), in which case *Terrell* would be controlling, or an individual (former Sheriff Jack Strain), in which case *Holloway* and Civil Code article 2993 would be controlling.[7] Because we are unaware of any controlling Louisiana case law, we shall consider (1) the rationale for the existing case law that provides that it is the sheriff, not the office, who has procedural capacity and (2) the rationale for allowing a person to sign a UM waiver on behalf of a legal entity, even though that individual did not have <u>written</u> authority to do so.

The cases involving the procedural capacity of a sheriff's office generally revolve around questions of Eleventh Amendment immunity. *See, e.g. Cozzo*, 279 F.3d 273; *Porch*, 67 F. Supp. 2d 631; *Causey*, 167 F. Supp. 2d 898. Nonetheless, the case regularly cited by courts analyzing this issue under Louisiana law, and the earliest case that this Court could find discussing the issue, is *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d

---

[6] No such writing was submitted to the Court and Plaintiff notes that Ms. Taylor's deposition testimony indicates that she was merely told verbally to sign all insurance forms on behalf of the department. Rec. Doc. 26 at 9 (citing Rec. Doc. 22-7 at ¶ 16 (citing Rec. Doc. 22-2 at 12-13)).
[7] The arguments made in Defendant's reply memorandum largely turn on the answer to this question.

236 (La. App. 3 Cir. Aug. 30, 1977), *writ denied*, 352 So. 2d 235 (La. 1977), *overruled on other grounds by Jenkins v. Jefferson Par. Sheriff's Office*, 402 So. 2d 669 (La. 1981).[8] In that case, the plaintiff was a worker's compensation insurer forced to pay benefits after a police department employee drowned while working for the defendant sheriff's department. *Id.* at 237. The insurance company claimed that the department's negligence led to the man's death, such that it should be solidarily liable for the compensation paid by the insurance company. *Id.* Thereafter, defendant L.R. Hataway, Sheriff of Grant Parish, filed a motion for summary judgment seeking to dismiss the claims against him because he was not the sheriff at the time of the accident. *Id.* at 238. The trial court granted summary judgment in favor of the sheriff. *Id.* On appeal, the plaintiff argued that it was the sheriff's office who should be held liable; in other words, Hataway, as the successor of the previous sheriff, should be held responsible for the official acts of his predecessor. *Id.* The Louisiana Third Circuit phrased the question presented in this

---

[8] *Jenkins* overruled *Liberty Mutual* only insofar as the latter held that a current sheriff could not be held liable for the alleged negligent acts committed under a former sheriff. *See also Riley v. Evangeline Par. Sheriff's Office*, 94-202 (La. 4/4/1994); 637 So. 2d 395; *Green v. New Orleans Police Dep't*, No. 12-1992, 2013 WL 5739076, at *3 and n. 6 (E.D. La. Oct. 22, 2013). We examine *Liberty Mutual* because it found that the sheriff individually, not his or her department, has the legal status to sue or be sued. This rule is still good law in Louisiana and we want to better understand the rationale for the rule. The facts and holding of *Liberty Mutual* are included here merely to provide a full summary of the case, not because they have any bearing on our understanding of existing Louisiana law or our ultimate decision.

12

way: "whether L.R. Hataway, the present Sheriff of Grant Parish can be held liable, individually, in his official capacity as Sheriff, for the alleged acts of negligence committed by his predecessor . . . ." *Id.*

The Louisiana Third Circuit began its analysis by recognizing that it is the individual sheriff, not the department, who is constitutionally designated and that the department is not elected, but merely appointed by the elected sheriff for his term of office. *Id.* at 238-39. Further, it is the individual sheriff who is liable in damages for wrongful or negligent acts committed while in office and it is the sheriff who is authorized to contract for insurance to cover such losses. *Id.* at 239 (citing La. Rev. Stat. Ann. § 33:1450.1, redesignated as La. Rev. Stat. Ann. §§ 5560; 1421-1450.1). Thus, the sheriff's department "<u>is not a legal entity capable of suing and being sued</u> . . . [and] liability is personal to the Sheriff. This liability is not that of the Sheriff's Department therefore it must necessarily follow that the personal liability of a former Sheriff is not continued or transferred to the successor sheriff." *Id.* at 239 (emphasis added).

While the issue before us today is not one of liability or Eleventh Amendment immunity, the court's reasoning in *Liberty Mutual* provides some insight into the manner in which Louisiana courts and the Louisiana legislature views sheriff's offices. Indeed, the modern version of one of the statutes discussed by the

13

court in *Liberty Mutual*, La. Rev. Stat. Ann. § 5560, provides that it is the "Sheriffs" who are "authorized to contract for insurance," and that "the premiums on said insurance [are] to be paid by the sheriff as an expense of his office out of the sheriff's general fund . . . ." The statute does not refer to the department. If the Louisiana Constitution conferred authority on, the citizens elected, and the legislature refers to the individual sheriff, not the department, then perhaps it is the sheriff who must sign the UM waiver or confer written authority to do so.

   We now turn to our second inquiry regarding the rationale for allowing a person without written authority to sign a UM waiver on behalf of a legal entity. In *Terrell*, Plaintiff Angela M. Terrell was the driver of a vehicle involved in an accident. 11-1472, p. 1; 96 So. 3d at 660. She was employed by an entity referred to as PTI and driving a vehicle that PTI leased from an entity referred to as ULI. *Id.* PTI and ULI were separate entities that were owned by United Companies, which was, in turn, privately owned by the Romain family. *Id.* Ms. Terrell sued the company that insured the vehicle that she was driving. *Id.* The insurance company then claimed that its insured, PTI, signed a valid UM waiver. *Id.* Specifically, Charles Guard, an employee of ULI, signed the waiver, claiming that he was given verbal authority to do so by Ronald Romain. *Id.* The only issue on appeal was whether or not Mr. Guard

"had been properly delegated the authority to sign and reject UM coverage on the company's behalf." *Id.* at 6; 662.

The Louisiana Fourth Circuit determined that the term "legal representative" in the UM statute meant "an *individual* authorized on behalf of an entity" because "[a]n entity itself cannot act on its own behalf, but instead gives authority to an individual to act on its behalf." *Id.* at 7; 662 (emphasis in original). To accept Ms. Terrell's argument that "since the UM coverage rejection must be in writing, the legal representative must have authority to do so in writing to comply with [Civil Code article] 2993" (*id.* at 3; 661), the court reasoned that "the president of a corporation, the manager or members of a limited liability company, or a partner of a partnership would have to *specifically* delegate in writing to another individual the authority to sign a UM rejection on behalf of the entity" (*id.* at 6; 662) (emphasis in original). In affirming the trial court's judgment dismissing Ms. Terrell's claims, the court distinguished *Holloway*, 03-896; 861 So.2d 763, noted that "[n]o Louisiana law exists requiring the governing body of an entity or a president or chief executive officer of an entity to formally and in writing specify who has authority to decline UM coverage," and stated that to find otherwise "would be like straining at a gnat after swallowing the camel, letting alone unreasonably burdensome." *Id.* at 6-8; 662-63.

15

Thus, it appears that the Louisiana Fourth Circuit's rationale for upholding a waiver signed by a corporate employee without written authority to sign such waiver is that it would be unreasonably burdensome to demand otherwise. The court even included the following illustration in its opinion:

> [T]he president of Exxon Mobil Corporation would have to designate in writing the precise individual who is authorized to reject Louisiana UM coverage and when that individual left Exxon's employment or transferred to another position within Exxon's corporate structure, a new written authorization would have to [be] signed by the corporate president . . . .

*Terrell*, 11-1472, p. 6; 96 So. 3d at 662 n. 2. To an international corporation like Exxon, the issue of UM coverage may seem relatively small and thus the burden of designating a legal representative in writing relatively unreasonable. An obvious feature distinguishing such a corporation from a sheriff's office is size; because a sheriff's office is smaller, presumably it would be less burdensome to require the sheriff to either sign the waiver himself or sign a contract conferring such authority on another. On the other hand, when discussing entities, the *Terrell* court referred to entities of all sizes: "such as a corporation, limited liability company, partnership, trust, or estate . . . ." *Id.* at 6; 662. Plus, while a sheriff's office is admittedly smaller and therefore arguably better equipped to handle this problem, the problem would nevertheless be similar: The sheriff would have to designate in writing the precise individual who is authorized to

16

reject Louisiana UM coverage and when that individual left the department or transferred to another division, or when a new sheriff was elected, a new written authorization would have to be signed.

Nevertheless, even though a sheriff's office can be compared to a legal entity, we are faced with decades of Louisiana case law recognizing that a sheriff's department is headed by a single individual. In that way, this case is easily distinguishable from *Terrell*, because, unlike a legal entity, a sheriff can act on his or her own behalf. Plus, a sheriff's office may be distinguished from the legal entities at issue in *Terrell* in various ways:  a sheriff's office is necessarily headed by an individual and that individual is given authority by the Louisiana Constitution and the electorate, and according to laws enacted by the Louisiana legislature. In other words, when articles of incorporation are filed, the intent is to create a <u>separate legal entity</u>; but when a sheriff is elected, the intent is to give an <u>individual</u> the authority to enforce the laws within his or her jurisdiction.[9]

---

[9] In our review of the case law, we discovered several cases that could have provided further guidance on this issue but nonetheless failed to directly address it. For example, in a more recent case, the Louisiana Supreme Court considered whether or not individual sheriff's deputies were considered named insureds on a UM policy issued to the "Webster Parish Sheriff's Department." *Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 3/17/97); 691 So. 2d 665. Relevant here, the policy at issue provided coverage for "you," meaning the named insured. *Id.* at 3; 667. In finding that the policy included the deputy as a named insured, the Louisiana Second Circuit relied on *Employers Ins. Co. of Wausau v. Dryden*, 422 So. 2d 1243, 1245 (La. App. 1st Cir. 1982) (in which the Louisiana First Circuit determined that the policy issued to "Terrebonne Parish Sheriff's Office" included "not only the Sheriff, but all Deputies as well, as,

17

Plus, to waive UM coverage, Louisiana case law demonstrates that even sheriff's offices must abide by *Duncan*'s strict requirements. For example, in *Edden v. Ortego*, the sheriff signed a UM waiver in which the named insured was the sheriff's office. 08-775, p. 1 (La. App. 3 Cir. 12/10/08); 999 So. 2d 300, 301. However, the court affirmed the trial court's ruling granting summary judgment in favor of the plaintiff, because the waiver was

---

had the policy been intended to designate the Sheriff alone as Named Insured, the Named Insured would have been the Sheriff."). The Louisiana Supreme Court, however, did not agree with this reasoning. First, the Court recognized the decades of Louisiana case law holding that a sheriff's department is not a legal entity and that only the sheriff has the capacity to sue or be sued. *Valentine*, 96-1382, pp. 4-5; 691 So. 2d at 668. Then the Court stated that, "regardless of whether the policy issued to the 'Webster Parish Sheriff's Department' includes as a named insured the Sheriff in his individual capacity, we disagree with the *Dryden* court and the court of appeal in the instant case that the Sheriff's deputies are included as named insureds . . . ." *Id.* at 5; 668-69. According to the Court, if deputies were included as named insureds, then they would be provided UM coverage "regardless of where they were or what they were doing, thus negating the need for the deputies to obtain UM coverage for themselves." *Id.* at 5; 669. Plus, it was more reasonable to conclude that the sheriff intended to cover his deputies only when they were driving or occupying their patrol cars, because he was under no obligation to provide the deputies with any coverage at all and there was no indication that the deputies paid for such coverage. *Id.* Nonetheless, the Court clarified that this holding did not mean that the sheriff was the only named insured; instead, the Court "decline[d] to comment on whether the Sheriff individually is included as a named insured under the policy issued to the Webster Parish Sheriff's Department." *Id.* at 6; 669. If the Supreme Court conclusively held that the sheriff was a named insured, it would serve as persuasive evidence that the sheriff, as an individual, has the authority to sign a UM waiver. However, the Court declined to make such a holding. Consequently, we are left to analyze the issue before us with little guidance from the state's highest court.

Again, the issue before this Court was narrowly avoided by a Louisiana court in *Faucheaux v. Boston Old Colony Ins. Co.*, 93-384 (La. App. 5 Cir. 3/16/94); 633 So. 2d 959, 961, *writ granted in part*, *Louque v. Commercial Union Ins. Co.*, 94-1296 (La. 9/30/94); 642 So. 2d 858. In that case, Chief Hebert LeRay, not former Sheriff Johnny Marino, signed the UM waiver. In a footnote, the court stated that "[i]t was apparently agreed by all parties that Chief LeRay was an agent of the St. Charles Parish Sheriff's Office, authorized to contract with others for insurance on the sheriff's office's behalf." *Id.* at 961 n. 1. The court was essentially able to avoid determining whether or not the sheriff must sign a UM waiver or confer such authority in writing.

18

not "clear and unmistakable." *Id.* Specifically, the waiver included the name of the sheriff's office as the named insured, and the signature line contained the signature of the sheriff, but the waiver did not indicate that the man signing was the sheriff or identify him as a legal representative in any other way. *Id.* at 3; 303. Thus, because (1) the waiver included only the name of the named insured, not the name of the legal representative actually signing the document, and (2) "the object of the UM legislation is to promote full recovery for automobile accident victims by making such coverage available for them," such that "the UM statute is to be liberally construed, and the exceptions to coverage interpreted strictly," the court found no error in the trial court's granting of the plaintiff's motion for partial summary judgment. *Id.* at 5; 304 (quoting *Cohn v. State Farm Mut. Auto. Ins. Co.*, 03-2820, p. 4 (La. App. 1 Cir. 2/11/05); 895 So. 2d 600, 602).

Essentially, the Louisiana Third Circuit invalidated a facially valid UM waiver signed by the sheriff simply because he failed to print his name with the designation "Sheriff." In the instant case, it was not even the sheriff who signed the waiver, but an employee of the department, and that employee also failed to designate on the face of the waiver by what authority she was signing.

We recognize that Plaintiff has presented a novel legal argument. However, in light of *Liberty Mutual*, 350 So. 2d 236 and

19

its progeny (recognizing that a sheriff, not his or her office, has the procedural capacity to sue or be sued), LA. REV. STAT. Ann. § 5560 (providing that it is a sheriff, not his or her office, who may contract for insurance), the differences between a business organization and a sheriff's office (including, for example, manner of creation and size), and the fact that "the UM statute is to be liberally construed and . . . a rejection of the coverage provided by law must be clear and unmistakable" (*Daigle*, 96-1662, p. 3; 691 So. 2d at 1214 (citing *Roger v. Estate of Moulton*, 513 So. 2d 1126, 1131 (La. 1987))), we find that it was the individual sheriff who was obligated to sign the UM waiver and any mandatary contract conferring that authority on another had to be in writing. There is no such writing before the Court, so the UM waiver in this case is invalid. Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Rec. Doc. 22) is **DENIED.**

New Orleans, Louisiana, this 7th day of February, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE